<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 2:20-cr-00806 (BRM) |
| JASSIEM HARPER, | |
| Defendant. | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Jassiem Harper's ("Harper") Motion to Suppress Evidence and Motion for *Franks* Hearing. (ECF No. 49.) Plaintiff, the United States of America (the "Government"), opposed the motions. (ECF No. 51.) Having reviewed the parties' submissions filed in connection with the motions and having heard oral argument on February 24, 2021, for the reasons set forth below and for good cause having been shown, Harper's motions are **DENIED**.

**I.    BACKGROUND**

In or around mid-2019, the Linden Police Department received a tip that Quincy Lowery ("Lowery") was distributing narcotics from a residential building in 1213 Roselle Street, Linden, New Jersey (the "Building"), which includes Lowery's basement apartment (the "Lowery Residence") and Shakeerah S. Scott's ("Scott") second floor apartment (the "Scott Residence"). (ECF No. 49-1 at 2; ECF No. 51 at 1.) Law enforcement subsequently conducted investigation, including installing a surveillance camera outside of the Building, which led law enforcement to believe Lowery, Scott, and Harper conducted narcotics distribution activities from the Building.

(ECF No. 49-1 at 2; ECF No. 51 at 1.) In particular, law enforcement observed (1) Harper frequently visited the Building, (2) Lowery, Scott, and Harper shared resources such as vehicles; (3) the three carried bags and boxes into and out of the Building, and (4) the three engaged in suspected narcotics transactions outside the Building. (ECF No. 51 at 1.)

On or about January 3, 2020, law enforcement obtained a search warrant (the "Search Warrant") from the Honorable William A. Daniel, Judge of the Superior Court of New Jersey ("Judge Daniel") for the Lowery Residence, the Scott Residence, Harper's apartment at 533 Court Street, Elizabeth, New Jersey (the "Harper Residence"),[1] Harper's person, and a white BMW registered to Harper. (*Id.* at 2; ECF No. 49-1 at 1.) On January 6, 2020, law enforcement executed the search warrant and arrested Harper. (ECF No. 49-1 at 1; ECF No. 51 at 4.) The search revealed: (1) narcotics, narcotics paraphernalia, and firearms in the Lowery Residence; (2) narcotics in the Scott Residence; and (3) materials allegedly used for packaging narcotics in the Harper Residence. (ECF No. 51 at 4–5.)

On February 19, 2020, Harper, Lowery and Scott were charged through a criminal complaint with narcotics-related offenses, and Lowery was also charged with a firearm offense. (*Id.* at 5.) On September 17, 2020, a grand jury indicted Harper for knowingly and intentionally conspiring and agreeing with others to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. (ECF No. 49-1 at 1; ECF No. 51 at 5.) On January 8, 2021, Harper filed a Motion to Suppress Evidence collected from the Harper Residence and a Motion for *Franks* Hearing. (ECF No. 49.) On January 22, 2021, the Government opposed the motions. (ECF No. 51.)

---

[1] As discussed in Part III.A.2, *supra*, the parties do not dispute Harper resides at 533 Court Street, Elizabeth, New Jersey.

## II.     LEGAL STANDARD

Federal Rule of Criminal Procedure 41(h) provides "[a] defendant may move to suppress evidence in the court where trial will occur, as Rule 12 provides." Fed. R. Crim. Pro. 41(h). Rule 12 requires suppression motions be made prior to trial. Fed. R. Crim. P. 12 (b)(3)(C).

The Supreme Court "created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231 (2011). "The Fourth Amendment forbids 'unreasonable searches and seizures,' and this usually requires the police to have probable cause or a warrant before making an arrest." *Herring v. United States*, 555 U.S. 135, 136 (2009). "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[A] defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citations omitted). "The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated." *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) (citing *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006)).

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the

> finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). A defendant is entitled to a *Franks* hearing "only if he (1) made a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) showed that the false statements or omitted facts were 'necessary to the finding of probable cause.'" *Pavulak*, 700 F.3d at 665 (quoting *Yusuf*, 461 F.3d at 383–84).

### III.   DECISION

#### A.   The Court Declines to Suppress the Evidence Obtained from the Search of the Harper Residence

Harper maintains the affidavit in support of the Search Warrant does not provide a substantial basis for finding probable cause. (ECF No. 49-1 at 6.) Harper claims the affidavit lacks any concrete evidence, aside from the affiant's uncorroborated suspicion, that Harper was involved in narcotics distribution. (*Id*. at 7.) Harper stresses he has no history of narcotics-related offenses and was not observed to possess narcotics or involved in a controlled purchase of narcotics. (*Id*.) Harper points out law enforcement did not receive any tips indicating his engagement in the distribution of narcotics. (*Id*.) Harper explains the affidavit merely shows he visited his cousin Lowery's home during the holidays, and even if the affidavit were sufficient to support a finding that criminal activity was occurring at the Lowery Residence, it is still insufficient to show Harper was engaged in any criminal behavior or contraband would be found at the Harper Residence. (*Id*.) The Government asserts Harper has a significant criminal history and a history of noncompliance with conditions of release. (ECF No. 51 at 5–6.) The Government contends the affidavit contains

4

detailed descriptions of Harper's narcotics-related activities, which were sufficient for Judge Daniel's probable cause determination. (*Id*. at 11.) The Court agrees.

Upon reviewing an affidavit and the resulting search warrant, an "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236. The probable cause determination of the judge issuing the search warrant "should be paid great deference by reviewing courts." *Id*. (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). The standard of review for an issuing judge's probable cause determination is whether there is a "substantial basis" to conclude "a search would uncover evidence of wrongdoing," and "the Fourth Amendment requires no more." *Id*. (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965) (citing *Jones*, 362 U.S. at 270). Therefore, the Court applies a deferential substantial basis standard in reviewing Judge Daniel's probable cause determination.

"[S]earch warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993) (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117–18 (3d Cir. 1983)). "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Berry*, 132 F. App'x 957, 961 (3d Cir. 2005) (quoting *Gates*, 462 U.S. at 238).

> The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

5

*United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)). "[I]t is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences." *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002). Such a reasonable inference is applicable if there is evidence supporting three preliminary premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." *Id*. If "the affidavit contained evidence meeting *Burton*'s three 'preliminary premises,'" then there is "a substantial basis" to conclude "probable cause existed to search" the suspect's home. *United States v. Stearn*, 597 F.3d 540, 565 (3d Cir. 2010). Here, each premise under *Burton* is met.

### 1. There Is Evidence That Harper Was a Drug Dealer

Harper does not deny the affidavit could be "sufficient to support a finding that criminal activity was occurring at" the Building. (ECF No. 49-1 at 7.) The Court agrees the affidavit contains sufficient evidence to find the alleged drug activities occurred at the Building. Between December 19, 2019, and January 3, 2020, law enforcement observed multiple vehicles and individuals (other than Harper, Lowery, and Scott) briefly approached and left the Building, to engage in what the affiant believed to be narcotic transactions based on his training and experience. (*Id.* Ex. A at ¶¶ 11, 12, 13, 18, 21, 22, 30, 39, 42.) Such observations corroborate the tip received by law enforcement (*id.* Ex. A at ¶ 2) to the extent that the Building was used to distribute narcotics. *See United States v. Washington*, Crim. A. No. 13-50048, 2014 U.S. Dist. LEXIS 57085, at *9 (N.D. Ill. Apr. 24, 2014) (finding that "the observation of frequent visitors to the residence who stayed for only a brief period of time" may indicate illegal drug transactions, which the informant "and the narcotics unit officers performing surveillance, clearly suspected," and such an

6

observation "was sufficient to cause a reasonably prudent person to believe that a search of the residence would uncover evidence of illegal drug sales"); *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) ("Police surveillance which 'shows an unusually high volume of visitors briefly entering and leaving a residence, consistent with drug trafficking,' can [] corroborate information from a confidential informant that the residence is being used to distribute narcotics." (quoting *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992))). The Building's involvement with drug activities is further supported by other facts alleged in the affidavit: (1) a drug-sniffing dog alerted positive to the odor of narcotics in the trash bags collected from the Building (ECF No. 49-1 Ex. A at ¶ 53); and (2) a warranted search of trash bags seized from the Building revealed Fentanyl and Heroin (*id.* Ex. A at ¶¶ 55, 57). Therefore, law enforcement here has observed "frequent short term traffic entering and leaving the" Building, which "raises a suspicion of drug-related criminal conduct when viewed against the other circumstances alleged in the affidavit" and is "probative as to probable cause for believing that drug trafficking is occurring" at the Building. *United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982). The frequent observations of alleged drug activities at the Building during a short period of time suggest the scale of alleged drug activities is substantial.

The affidavit also contains sufficient evidence of Harper's involvement with the Building. Law enforcement's surveillance video shows, over the course of two weeks in a holiday season, Harper paid thirty-one visits to the Building. (ECF No. 51 at 2.) Harper admits he "visited" the Building "during the holidays." (ECF No. 49-1 at 7.) In light of the above evidence of the Building's connections with alleged drug activities, Harper's frequent visits to the Building raise a fair probability that he was a drug dealer. *See Williams v. Atl. City Dep't of Police*, Civ. A. No. 08-4900, 2010 U.S. Dist. LEXIS 53776, at *16 (D.N.J. June 2, 2010) ("Under some circumstances,

presence in an apartment being used for regular drug distribution is a sufficient basis for probable cause to arrest for possession, . . . because those permitted to be present at a location of frequent drug activity are less likely to be innocent visitors to the private space." (citing *United States v. Pace*, 898 F.2d 1218, 1240 (7th Cir. 1990))); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1200 (3d Cir. 1995) ("[T]he police had evidence that the apartment had been the scene of frequent drug sales to a large number of buyers for some time. Thus, there was . . . a good likelihood that visitors to the apartment were drug buyers.").

Further, the affidavit alleges other suspicious activities of Harper indicative of drug trafficking. First, Harper was observed to generously spray the trunk and the back seat of his vehicle, which law enforcement believed was an attempt to mask the odor of narcotics. (ECF No. 49-1 Ex. A at ¶ 33; ECF No. 51 at 16.) Indeed, "air freshener spray" is "commonly used to mask marijuana odors." *United States v. Baley*, Crim. A. No. 20-124, 2020 U.S. Dist. LEXIS 227763, at *41 (E.D. Pa. Dec. 4, 2020); *see also United States v. Komsonekeo*, Crim. A. No. 19-33, 2019 U.S. Dist. LEXIS 97698, at *12 (W.D. Okla. June 11, 2019) ("An odor-masking agent 'may give rise to reasonable suspicion on the part of law enforcement officials that the odor is being used to mask the smell of drugs.'" (quoting *United States v. Salzano*, 158 F.3d 1107, 1114 (10th Cir. 1998))). Second, Harper was seen to carry a pack of Scotch tape from his vehicle to the Building. (ECF No. 49-1 Ex. A at ¶ 31.) This provides additional evidence of Harper's alleged involvement in drug activities. *See Parker v. State*, No. 2568, 2016 Md. App. LEXIS 811, at *27 (Md. Ct. Spec. App. Aug. 3, 2016) ("The jury could infer that the scale . . . was used for the purposes of drug distribution, especially given the context of other items with which it was found: the scotch tape . . ."); *United States v. Bressette*, Crim. A. Nos. 90-50621, 90-50672, 1991 U.S. App. LEXIS 25366, at *12 (9th Cir. Oct. 24, 1991) (finding that the defendant's participation in drug conspiracy was "supported

by the fact that his purse was found to contain scotch tape"); *United States v. Yoon*, 751 F. Supp. 161, 164 (D. Haw. 1989) ("[S]cotch tape . . . is frequently used by carriers of crystal methamphetamine to stop the smaller pieces of drug from escaping."). Third, Harper allegedly exited the Building with an unidentified individual wearing a painter's dust mask (ECF No. 49-1 Ex. A at ¶ 40), which is "commonly used to shield against dust generated by drug preparation." *United States v. Brown*, 3 F.3d 673, 675 (3d Cir. 1993); *see also United States v. Elder*, Crim. A. Nos. 01-182, 02-82, 2019 U.S. Dist. LEXIS 205407, at *6 (W.D.N.Y. Nov. 26, 2019) (considering "dust masks" as something "commonly used for the sale of narcotics"). This is evidence that Harper was involved with another individual suspected of drug trafficking. *See United States v. Acosta*, 85 F.3d 275, 281 (7th Cir. 1996) ("[T]he physical evidence found at [the defendant's] residence, including 'tools of the trade' such as a dust mask . . . provided further support for the conclusion that [the defendant] was dealing in cocaine at the time of the heroin offense.").

Taken together, the affiant, with his training and experience, has sufficient evidence to infer Harper was a drug dealer.

### 2. There Is Sufficient Evidence to Confirm Harper's Residence

A New Jersey State parole officer provided information that Harper resided at 533 Court Street, Elizabeth, New Jersey with his aunt. (ECF No. 49-1 Ex. A at ¶ 66.) Also, Harper was observed to drive in a vehicle registered under his name and with a listed residence at 533 Court Street. (*Id.* Ex. A at ¶ 24.) Further, law enforcement observed Harper entered 533 Court Street with a key. (*Id.* Ex. A at ¶¶ 45, 46.) Harper does not dispute the above evidence. Therefore, the Court finds Harper resides at 533 Court Street, Elizabeth, New Jersey.

### 3. There Is Evidence to Suggest the Harper Residence Contained Contraband Related to His Alleged Drug Activities

"The facts recited in the affidavit linking" the drug dealer's vehicle to both his drug

activities and "residence constitute evidence 'that [his] home contains contraband linking it to the drug dealer's activities.'" *Pitner v. Murrin*, 812 F. Supp. 2d 661, 675 (E.D. Pa. 2008) (citing *Burton*, 288 F.3d at 104; *United States v. Sarraga-Solana*, 263 F. App'x 227, 230–31 (3d Cir. 2008)). In *Pitner*, the connections between a known drug dealer's drug activity and the plaintiffs' residence centered upon the drug dealer's vehicle. *Id.* at 674. The police officer in *Pitner* observed the drug dealer "drove a red Ford Bronco" to a meeting with another individual before that individual "engag[ed] in a drug deal;" the officer also found the red Ford Bronco was registered to the drug dealer "at plaintiffs' address." *Id.* The affidavit in *Pitner* detailed the police officer's "surveillance of plaintiffs' home to further connect the red Ford Bronco to that location," especially an observation that the red Ford Bronco was "parked in plaintiffs' driveway." *Id.* at 674–75.

The facts here are analogous to *Pitner*. On the one hand, Harper's vehicle is registered with the Harper Residence (*id.* Ex. A at ¶ 24) and was seen to be parked near the Harper Residence (*id.* Ex. A at ¶¶ 34, 45), which evidences a link between Harper's vehicle and the Harper Residence. On the other hand, the surveillance video shows Harper conducted suspected drug transactions with multiple unidentified persons from his vehicle near the Building. (*Id.* Ex. A at ¶¶ 30, 42, 46). This links Harper's vehicle directly to his alleged drug activities. Therefore, it is reasonable to infer the Harper Residence contained evidence linked to Harper's alleged drug activities.

Moreover, law enforcement observed Harper transported objects directly between the Building and the Harper Residence in his vehicle. (*Id.* Ex. A at ¶¶ 34, 46.) This observation, along with other aforementioned suspicious activities of Harper—generously spraying his vehicle with what could be an odor-masking agent and carrying Scotch tapes from his vehicle to the Building— raises a possibility that Harper used his vehicle to transport drug-related materials between the Harper Residence and the Building. Especially, the day on which Harper was seen to transport

10

＊

Scotch tapes was December 27, 2019, the same day when Harper allegedly conducted a drug transaction with an unidentified individual. (*Id.* Ex. A at ¶¶ 30, 31.) Taken together, the above evidence further supports a nexus between the Harper Residence and Harper's alleged drug activities. *See United States v. Brown*, 828 F.3d 375, 382–83 (6th Cir. 2016) (citations omitted) (finding the "surveillance indicating that [the defendant] had used the car to transport heroin from his home to [another suspect drug dealer's residence] on the day" of alleged drug trafficking constituted direct evidence to "establish the requisite nexus between the place to be searched and the evidence to be sought").

In conclusion, "evidence on each premise is profuse." *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002). There is a fair probability that the Harper Residence contained evidence of Harper's alleged drug activities. Therefore, the Search Warrant is supported by probable cause, and the evidence collected pursuant to the Search Warrant will not be suppressed.

> **B.** **Harper Is Not Entitled to a *Franks* Hearing**
>
> > **1.** **The Alleged Mischaracterization of a Meeting's Duration Does Not Warrant a *Franks* Hearing**

Harper asserts the affidavit is affirmatively false in characterizing Harper's December 27, 2019, meeting with an individual in Harper's vehicle as having lasted merely "minutes," and the affiant knew, based on the surveillance footage, that the two sat in the vehicle for at least 22 minutes. (ECF No. 49-1 at 8.) Harper argues correcting this falsity would render this meeting lack the indicia of a drug transaction, which is usually a short interaction for a quick exchange of drugs and money, as opposed to a longer interaction that indicates a more personal interaction. (*Id.* at 9.) The Government alleges it has reviewed the surveillance video of Harper's December 27, 2019, meeting that began at 5:54 pm and ended at 6:16 pm, during which the two entered Harper's vehicle after 5:59 pm; in other words, the two remained in the vehicle for less than 17 minutes.

(ECF No. 51 at 14.) The Government posits it was not false to state Harper and the individual stayed in the vehicle for "minutes," which is an approximation of a short period of time and could refer to a meeting that lasted less than 17 minutes. (*Id.*) The Government maintains, even if the affidavit mischaracterized the meeting's duration, it is not a knowingly or recklessly included false statement. (*Id.*) Finally, the Government contends even correcting this alleged error would not render the affidavit insufficient to provide a basis to find probable cause, because other facts alleged in the affidavit are sufficient to indicate the meeting was a drug transaction. (*Id.* at 15–16.) The Court agrees.

Even if the affiant knowingly or recklessly mischaracterized the December 27, 2019, meeting as having lasted only "minutes," the fact that the meeting lasted 17 or 22 minutes does not negate a fair probability that it was a drug transaction. After all, this duration is consistent with a drug transaction. *See United States v. Pitts*, 497 F. App'x 252, 254 (3d Cir. 2012) ("[Law enforcement officers] saw [the defendant] pull into a convenience store parking lot, where a vehicle pulled up behind [the defendant's] car, the driver entered the passenger side of [the defendant's] car, and the two remained there for approximately sixteen minutes. Based on the officers' experience with and knowledge of drug transactions, they reasonably suspected that [the defendant] and the other driver were engaged in such illegal conduct."); *see also United States v. Keeling*, 783 F. App'x 517, 522–23 (6th Cir. 2019) ("At each location, [the defendant] stayed for approximately twenty minutes—a period of time that the officers testified was consistent with drug transactions . . . Looking at these facts in the aggregate, the officers had 'a particularized and objective basis' to believe that [the defendant] was in the process of trafficking in methamphetamine."); *United States v. Casamento*, 887 F.2d 1141, 1160–61 (2d Cir. 1989) ("[The defendant] was observed meeting with [a drug dealer] several times . . . for meetings which lasted

up to twenty minutes. Given . . . the suspicious nature of [the defendant's] dealings with [the drug dealer], there was sufficient evidence from which the jury could reasonably conclude that [the defendant] engaged in narcotics transactions with [the drug dealer]."); *c.f. United States v. Forjan*, Crim. A. No. 17-3011, 2018 U.S. Dist. LEXIS 222193, at *16 (W.D. Mo. July 16, 2018) (considering "forty-five minutes to an hour" as "much longer than a typical drug transaction"). In other words, the alleged false statement that the meeting lasted merely "minutes," as opposed to 17 or 22 minutes, is not necessary to the finding of probable cause. It therefore does not warrant a *Franks* hearing.

### 2. The Alleged Omission of the Familial Relationship Between Harper and Lowery Does Not Warrant a *Franks* Hearing

Harper claims law enforcement knew Harper was Lowrey's cousin, but intentionally omitted this information from the affidavit. (ECF No. 49-1 at 7–8.) Harper contends the affiant recklessly disregarded the truth as to the familial relationship between Harper and Lowery, which should have been checked and would have been readily apparent under the most cursory investigation. (*Id.* at 8.) Harper maintains correcting this alleged omission would render his visits to the Building during the holidays less indicative of criminality. (*Id.* at 9.) The Government stresses Harper submits no evidence that the affiant knew Harper and Lowery were cousins at the time the affidavit was executed. (ECF No. 51 at 14.) The Government further states Harper provides no evidence, other than unsupported attorney arguments, that he and Lowery actually are cousins. (*Id.* at 14 n.6.) The Government also insists the affiant was not required to investigate the familial relationship between Harper and Lowery before seeking a search warrant. (*Id.* at 15.) The Government argues Harper has not shown this alleged omission was designed to mislead the issuing court or made in reckless disregard of whether it would be misleading. (*Id.*) The Government contends even correcting this alleged omission would not render the affidavit

13

insufficient to provide a basis to find probable cause, because other evidence in the affidavit demonstrates Harper and Lowery were actively engaged in drug trafficking. (*Id.* at 15–16.) The Court agrees.

"A *Franks* hearing is appropriate where a defendant alleges material omissions in a warrant, rather than an affirmative falsity, in 'rare instances.'" *United States v. Meehan*, Crim. A. No. 11-440, 2013 U.S. Dist. LEXIS 63420, at *17 (E.D. Pa. May 3, 2013) (citing *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001)). "An allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id.* at *18 (quoting *Graham*, 275 F.3d at 506). Here, the alleged omission in the affidavit does not present a rare instance that justifies a *Franks* hearing.

First, nothing in the record indicates the affiant actually knew or recklessly disregarded the fact that Harper and Lowery were cousins, when he applied for the Search Warrant. An affiant recklessly disregards the truth when he "withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" *United States v. Romeu*, 433 F. Supp. 3d 631, 644–45 (E.D. Pa. 2020) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). Here, other than a naked assertion, Harper fails to allege any specific information available to the affiant, such as a common family name, which could render this familial relationship readily apparent to law enforcement. (*See* ECF No. 49-1 at 8.) Harper cannot simply assume such familial information of suspects is readily available to or should always be checked by law enforcement. *See United States v. Salas*, Crim. A. No. 07-557, 2008 U.S. Dist. LEXIS 92560, at *31–32 (S.D.N.Y. Nov. 5, 2008) (finding "no basis for a *Franks* hearing," though "[t]he defendant claim[ed] that [the affiant] erred in identifying [another suspect] as the

14

defendant's cousin," "because the source of the error was the [informant], who identified [another suspect] as the defendant's cousin, rather than the affiant himself").

Second, though Harper provides an alternative interpretation of his visits to the Building as purely family activities, it does not contradict law enforcement's observations, as discussed in Part III.A, *supra*, which substantiated the finding of probable cause here. *See Young v. City of Chester*, Civ. A. No. 17-3066, 2018 U.S. Dist. LEXIS 55320, at *6–7 (E.D. Pa. Mar. 29, 2018) ("The [the plaintiff's] [c]omplaint merely puts forward an alternate interpretation of the events. Plaintiff alleges that instead of discussing drugs, he spoke with Evans, his cousin, about an upcoming family reunion and that he asked Evans for a loan. Crucially, Plaintiff does not contradict [law enforcement]'s observation that Plaintiff gave Evans a small package. Under these circumstances, Plaintiff has failed to allege facts to show that [law enforcement] lacked probable cause to arrest Plaintiff . . . for possession with intent to deliver a controlled substance."). Moreover, family ties are consistent with drug trafficking conspiracies. *See, e.g., United States v. Merritt*, Crim. A. No. 07-550, 2014 U.S. Dist. LEXIS 96993, at *37 n.9 (E.D. Pa. July 16, 2014) (finding that "Defendant sold drugs under the supervision and protection of[] his cousin"); *United States v. Vazquez*, 449 F. App'x 96, 98 (3d Cir. 2011) ("Carlos Vallejo led a drug trafficking organization with his cousin, Nasser Perez, distributing cocaine in the Camden area."); *United States v. Brothers*, 75 F.3d 845, 846 (3d Cir. 1996) ("[T]he defendant was convicted of a drug conspiracy after lending a small sum of money to his cousin for the purchase of cocaine and driving him to the site of the transaction."). In a word, whether or not Harper and Lowery are cousins is immaterial to the finding of probable cause here. The alleged omission of this familial relationship from the affidavit cannot be a basis to warrant a *Franks* hearing.

Accordingly, Harper is not entitled to a *Franks* hearing.

**IV. CONCLUSION**

For the reasons set forth above, Harper's Motion to Suppress Evidence and Motion for *Franks* Hearing are **DENIED**. An appropriate order follows.


**Date: August 26, 2021**              */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**